Tyler J. Woods (State Bar No. 232464)
twoods@trialnewport.com
Tu-Quyen Pham (State Bar No. 260864)
tpham@trialnewport.com
**NEWPORT TRIAL GROUP**
A Professional Corporation
4100 Newport Place, Suite 800
Newport Beach, CA 92660
Tel: (949) 706-6464
Fax: (949) 706-6469

**HIDEN, ROTT & OERTLE, LLP**
A Limited Liability Partnership
Including Professional Corporations
ERIC M. OVERHOLT, ESQ.   (C.S.B. 248762)
eoverholt@hrollp.com
2635 Camino del Rio South, Suite 306
San Diego, California 92108
Telephone: (619) 296-5884
Facsimile:  (619) 296-5171

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THERMOLIFE INTERNATIONAL, LLC<br><br>Plaintiff,<br><br>vs.<br><br>LG SCIENCES,<br><br>Defendant. | Case No. **'13CV2172 LAB RBB**<br><br>**COMPLAINT FOR PATENT INFRINGEMENT**<br><br>**JURY TRIAL DEMANDED** |

///
///
///
///
///
///

1

Plaintiff Thermolife International, LLC ("Plaintiff") hereby alleges for its Complaint against LG Sciences ("Defendant"), on personal knowledge as to its own activities and on information and belief as to the activities of others, as follows:

## I. THE PARTIES

1. Plaintiff is a limited liability company organized and existing under the laws of Arizona, with a place of business at 1811 Ocean Front Walk in Venice, California, 90291.

2. Plaintiff is and was at all relevant times the exclusive licensee of the following United States Patents:

   a. Patent No. 6,646,006, titled "Enhancement of Vascular Function By Modulation of Endogenous Nitric Oxide Production or Activity"; and

   b. Patent No. 5,891,459, titled "Enhancement of Vascular Function By Modulation of Endogenous Nitric Oxide Production or Activity".

3. The above patents are and were owned by The Board of Trustees of the Leland Stanford Junior University ("Stanford University") and Plaintiff exclusively licenses and licensed the patents from Stanford University.

4. The above patents are referred to herein as the "patents in suit."

5. Plaintiff has been given the right by Stanford University to institute suit with respect to past, current, and future infringement of the patents in suit, including this suit against Defendant.

6. Defendant is a corporation organized and existing under the laws of Nevada with a principal place of business at 4920 S. Rainbow Blvd., Suite 11, in Las Vegas, Nevada, 89118.

///
///
///

## II. JURISDICTION AND VENUE

7. This is an action for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code. Accordingly, this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338, and 1367.

8. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 and 1400.

9. This Court has personal jurisdiction over Defendant. By way of example and without limitation, Defendant, directly or through intermediaries (including distributors, retailers, and others), makes, manufactures, ships, distributes, advertises, markets, offers for sale, and/or sells dietary supplement products that infringe on one or more claims of the patents in suit (hereinafter the "accused products"), which include without limitation products sold under the "I-GH-1" and "Anadraulic Pump" brand names, in the United States, the State of California, and the Southern District of California.

10. By way of further example and without limitation, Defendant has purposefully and voluntarily placed the accused products into the stream of commerce with the expectation that they will be purchased in the Southern District of California, and the products are actually purchased in the Southern District of California.

## III. THE DEFENDANT'S INFRINGEMENTS

11. Defendant has committed the tort of patent infringement within the State of California, and more particularly, within the Southern District of California, by virtue of the fact that Defendant has formulated, made, manufactured, shipped, distributed, advertised, offered for sale, and/or sold the accused products in this District, and continues to do so.

///
///
///

3

COMPLAINT FOR PATENT INFRINGEMENT

## A. DIRECT INFRINGEMENTS

12. Defendant's employees, agents, representatives and other persons sponsored by or who endorse Defendant and Defendant's products in advertising and marketing activities, have taken, used, and orally administered the accused products.

13. The accused products are formulated, made, manufactured, shipped, distributed, advertised, offered for sale, and sold by Defendant to include certain ingredients that, by virtue of their inclusion in the products, infringe one or more claims of one or more of the patents in suit.

14. The accused products are formulated, made, manufactured, shipped, distributed, advertised, offered for sale, and sold by Defendant to include specific ingredients for certain purposes that, by virtue of their inclusion in the products for such purposes, infringe one or more claims of one or more of the patents in suit, and as a result, when Defendant's employees, agents, representatives and other persons sponsored by or who endorse Defendant and Defendant's products in advertising and marketing activities orally administer the accused products, they are practicing and they practiced the methods disclosed in those claims.

15. The purposes for which these ingredients are included in the accused products are and were, without limitation, to enhance nitric oxide production, to improve nitric oxide activity, to produce nitric oxide, to boost nitric oxide levels in the body, and to enhance physical performance.

16. Defendant encouraged and/or is aware of the fact that its employees, agents, representatives and other persons sponsored by Defendant or who endorse Defendant and Defendant's products in advertising and marketing activities orally administered and administer the accused products and practice and practiced the methods disclosed in one or more claim of one or more of the patents in suit, and these employees, agents, representatives and other persons sponsored by Defendant or who endorse Defendant and Defendant's products in advertising and marketing

activities are and were acting under Defendant's direction and control when practicing those methods.

///

17. Therefore, Defendant is and was a direct infringer of one or more claims of one or more of the patents in suit, and Defendant practices and practiced the methods as set forth in one or more claims of one or more of the patents in suit.

## B. INDIRECT INFRINGEMENTS

18. End-users of Defendant's accused products were and are also direct infringers of one or more claims of one or more of the patents in suit.

19. End-users of Defendant's accused products have taken, used, and orally administered the accused products.

20. The accused products are and were formulated, made, manufactured, shipped, distributed, advertised, offered for sale, and/or sold by Defendant to include certain ingredients that, by virtue of their inclusion in the products, infringe and infringed one or more claims of one or more of the patents in suit.

21. The accused products are and were formulated, made, manufactured, shipped, distributed, advertised, offered for sale, and/or sold by Defendant to include specific ingredients for certain purposes that, because of their inclusion in the products for such purposes, infringe and infringed one or more claims of one or more of the patents in suit, and as a result, when end-users of Defendant's accused products orally administer and administered the accused products, they are and were practicing the methods disclosed in those claims.

22. Defendant's labels and advertising for the accused products explain and explained the elements and essential elements of one or more of the methods disclosed in the patents in suit, and those labels and advertising statements encourage, urge, and induce the accused products' end-users, and did so in the past, to purchase and orally ingest the products to practice those methods, and end-users do and did practice those methods.

23. Defendant has therefore specifically intended to cause these end-users to directly infringe the claimed methods of these patents, and in fact urged them to do so.

24. The accused products are and were not suitable for non-infringing uses, and none of Defendant's labels or advertisements for the accused products disclose or disclosed any uses for the products, nor for the compounds disclosed in the claimed methods of the patents in suit, that do not infringe upon such methods.

25. The inclusion of the specific infringing compounds in the products is and was material to practicing such methods.

26. Defendant has and had knowledge that the accused products are and were especially adapted by end-users of the products for the practicing of such methods, and, indeed, Defendant encourages, urges, and induces the accused products' end-users to purchase and orally administer the accused products to practice such methods, and has done so in the past.

27. Defendant intentionally and knowingly induced, encouraged, and urged end-users of the accused products to purchase and orally administer the accused products for the purposes of practicing the claimed methods, by having them orally ingest the compounds disclosed in such claims.

28. Defendant has and had knowledge of the fact that the accused products, particularly as administered, infringe on one or more claims of the patents in suit.

29. Defendant has and had direct, firsthand knowledge of the patents in suit.

30. For example and without limitation, Plaintiff believes Defendant has had knowledge of the patents in suit since November 2006, when an ongoing settlement of a patent infringement case relating to at least some of the patents in suit against Herbalife, a well-known company in Defendant's industry, was announced in press releases issued in a highly publicized manner. Plaintiff believes

Defendant's employees, agents, and representatives saw the press releases and were aware of the settlement and thus the patents in suit.

///

31. By way of further example and without limitation, Defendant sold its products through retailers, including online retailers, and those retailers have sold other companies' products whose labels and/or advertisements have been prominently marked with one or more of the patents in suit, by patent number, including without limitation, upon information and belief, the products manufactured and sold by Herbalife, Daily Wellness, and Vitality Research Labs. Defendant's employees, agents, and representatives have seen these labels and advertisements and, thus, Defendant has and had direct knowledge of the patents in suit.

32. By way of further example and without limitation, Defendant received written notice of the patents in suit from Plaintiff in April 2013.

33. Defendant brazenly and willfully decided to infringe the patents in suit despite knowledge of the patents' existence and its knowledge of the accused products' infringements of the patents.

34. At a minimum, and in the alternative, Plaintiff pleads that Defendant willfully blinded itself to the infringing nature of the accused products' sales.

35. Defendant did not cease its own direct infringement, nor its contributory infringement or inducement of infringement by end-users, despite its knowledge of the patents in suit and the end-users' infringing activities with respect to the patents in suit.

## IV.   **FIRST CAUSE OF ACTION**
### Infringement of U.S. Patent No. 6,646,006

36. Plaintiff repeats and re-alleges the allegations of the foregoing paragraphs of this Complaint as if fully set forth herein.

37. Defendant has in the past literally and directly infringed or directly infringed under the doctrine of equivalents one or more claims of United States Patent No. 6,646,006 by making, using, selling, and offering for sale the accused products, or any one of those products.

38. In addition to the fact that Defendant makes, uses, sells, and offers for sale the accused products, and did so in the past, further examples of Defendant's direct infringements include, without limitation, the fact that Defendant encouraged and/or is aware of the fact that its employees, agents, representatives and other persons sponsored by or who endorse Defendant and Defendant's products in advertising and marketing activities orally administer the accused products and practice the methods disclosed in one or more claims of United States Patent No. 6,646,006, and these employees, agents, representatives and other persons sponsored by or who endorse Defendant and Defendant's products in advertising and marketing activities acted under Defendant's direction and control when practicing those methods.

39. Defendant encouraged and was aware of these persons' oral administration of the accused products for these purposes, these persons are acting under Defendant's direction and control, and therefore Defendant directly practiced the methods disclosed in United States Patent No. 6,646,006.

40. End-users of Defendant's accused products were also direct infringers of one or more claims of United States Patent No. 6,646,006.

41. End-users of Defendant's accused products have taken, used, and orally administered the accused products.

42. The accused products were formulated, made, manufactured, shipped, distributed, advertised, offered for sale, and sold by Defendant to include certain ingredients that, by virtue of their inclusion in the products, infringed one or more claims of United States Patent No. 6,646,006.

43. The accused products were formulated, made, manufactured, shipped, distributed, advertised, offered for sale, and sold by Defendant to include specific ingredients for purposes that, by their inclusion in the products for such purposes, infringed one or more claims of United States Patent No. 6,646,006, and as a result, when end-users of Defendant's accused products orally administered the accused products, they were practicing the methods disclosed in one or more claims of that patent.

44. Defendant's labels and advertising for the accused products explained the elements and essential elements of the methods disclosed in United States Patent No. 6,646,006, and those labels and advertising statements encouraged, urged, and induced the accused products' end-users to purchase and orally ingest the products to practice those methods, and end-users did practice those methods.

45. Defendant therefore specifically intended to cause these end-users to directly infringe the claimed methods of United States Patent No. 6,646,006, and had in fact urged them to do so.

46. The accused products were not suitable for non-infringing uses, and none of Defendant's labels or advertisements for the accused products disclosed any uses for the products, nor for the compounds disclosed in the claimed methods, that did not infringe upon such methods.

47. The inclusion of these specific infringing compounds in the products was material to practicing such methods.

48. Defendant had knowledge that the accused products were especially adapted by end-users of the products for the practicing of such methods, and, indeed, Defendant encouraged, urged, and induced the accused products' end-users to purchase and orally administer the accused products to practice such methods.

49. Defendant intentionally and knowingly induced, encouraged, and urged end-users of the accused products to purchase and orally administer the accused products for the purposes disclosed in one or more claims of United States

Patent No. 6,646,006, by having them orally ingest the compounds disclosed in such claims.

50. Defendant had knowledge of the fact that the accused products, particularly as administered, infringed on one or more claims of United States Patent No. 6,646,006.

51. Defendant also had direct, firsthand knowledge of United States Patent No. 6,646,006 itself.

52. Defendant's activities were without express or implied license by Plaintiff.

53. As a result of Defendant's acts of infringement, Plaintiff suffered and will continue to suffer damages in an amount to be proved at trial.

54. Defendant's past infringements and/or continuing infringements have been deliberate and willful, and this case is therefore an exceptional case, which warrants an award of treble damages and attorneys' fees in accordance with 35 U.S.C. § 285.

## V.   SECOND CAUSE OF ACTION

### Infringement of U.S. Patent No. 5,891,459

55. Plaintiff repeats and re-alleges the allegations of the foregoing paragraphs of this Complaint as if fully set forth herein.

56. Defendant has in the past literally and directly infringed or directly infringed under the doctrine of equivalents one or more claims of United States Patent No. 5,891,459 by making, using, selling, and offering for sale the accused products, or any one of those products.

57. In addition to the fact that Defendant makes, uses, sells, and offers for sale the accused products, and did so in the past, further examples of Defendant's direct infringements include, without limitation, the fact that Defendant encouraged and/or is aware of the fact that its employees, agents, representatives and other persons sponsored by or who endorse Defendant and Defendant's products in

COMPLAINT FOR PATENT INFRINGEMENT

advertising and marketing activities orally administer the accused products and practice the methods disclosed in one or more claims of United States Patent No. 5,891,459, and these employees, agents, representatives and other persons sponsored by or who endorse Defendant and Defendant's products in advertising and marketing activities acted under Defendant's direction and control when practicing those methods.

58. Defendant encouraged and was aware of these persons' oral administration of the accused products for these purposes, these persons are acting under Defendant's direction and control, and therefore Defendant directly practiced the methods disclosed in United States Patent No. 5,891,459.

59. End-users of Defendant's accused products were also direct infringers of one or more claims of United States Patent No. 5,891,459.

60. End-users of Defendant's accused products have taken, used, and orally administered the accused products.

61. The accused products were formulated, made, manufactured, shipped, distributed, advertised, offered for sale, and sold by Defendant to include certain ingredients that, by virtue of their inclusion in the products, infringed one or more claims of United States Patent No. 5,891,459.

62. The accused products were formulated, made, manufactured, shipped, distributed, advertised, offered for sale, and sold by Defendant to include specific ingredients for purposes that, by their inclusion in the products for such purposes, infringed one or more claims of United States Patent No. 5,891,459, and as a result, when end-users of Defendant's accused products orally administered the accused products, they were practicing the methods disclosed in one or more claims of that patent.

63. Defendant's labels and advertising for the accused products explained the elements and essential elements of the methods disclosed in United States Patent No. 5,891,459, and those labels and advertising statements encouraged,

urged, and induced the accused products' end-users to purchase and orally ingest the products to practice those methods, and end-users did practice those methods.

64. Defendant therefore specifically intended to cause these end-users to directly infringe the claimed methods of United States Patent No. 5,891,459, and had in fact urged them to do so.

65. The accused products were not suitable for non-infringing uses, and none of Defendant's labels or advertisements for the accused products disclosed any uses for the products, nor for the compounds disclosed in the claimed methods, that did not infringe upon such methods.

66. The inclusion of these specific infringing compounds in the products was material to practicing such methods.

67. Defendant had knowledge that the accused products were especially adapted by end-users of the products for the practicing of such methods, and, indeed, Defendant encouraged, urged, and induced the accused products' end-users to purchase and orally administer the accused products to practice such methods.

68. Defendant intentionally and knowingly induced, encouraged, and urged end-users of the accused products to purchase and orally administer the accused products for the purposes disclosed in one or more claims of United States Patent No. 5,891,459, by having them orally ingest the compounds disclosed in such claims.

69. Defendant had knowledge of the fact that the accused products, particularly as administered, infringed on one or more claims of United States Patent No. 5,891,459.

70. Defendant also had direct, firsthand knowledge of United States Patent No. 5,891,459 itself.

71. Defendant's activities were without express or implied license by Plaintiff.

72. As a result of Defendant's acts of infringement, Plaintiff suffered and will continue to suffer damages in an amount to be proved at trial.

///

73. Defendant's past infringements and/or continuing infringements have been deliberate and willful, and this case is therefore an exceptional case, which warrants an award of treble damages and attorneys' fees in accordance with 35 U.S.C. § 285.

## VI.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for entry of judgment against Defendant as follows:

1. A declaration that Defendant has infringed the patents in suit, under 35 U.S.C. §§ 271 *et seq.*;

2. That Defendant be required to provide to Plaintiff an accounting of all gains, profits, and advantages derived by Defendant's infringement of the patents in suit, and that Plaintiff be awarded damages adequate to compensate Plaintiff for the wrongful infringing acts by Defendant, in accordance with 35 U.S.C. § 284;

3. That the damages awarded to Plaintiff with regard to the patents in suit be increased up to three times, in view of Defendant's willful infringement, in accordance with 35 U.S.C. § 284;

4. That this case be declared to be exceptional in favor of Plaintiff under 35 U.S.C. § 285, and that Plaintiff be awarded its reasonable attorneys' fees and other expenses incurred in connection with this action;

5. That Plaintiff be awarded its interest and costs of suit incurred in this action;

6. Compensatory damages;

7. Punitive damages; and

8. That Plaintiff be awarded such other and further relief as this Court may deem just and proper.

COMPLAINT FOR PATENT INFRINGEMENT

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff hereby demands a jury trial for all issues in this case that properly are subject to a jury trial.

DATED: September 12, 2013

**HIDEN, ROTT & OERTLE, LLP**

By: _____
Eric M. Overholt, Esq.
*Attorneys for Plaintiff*

COMPLAINT FOR PATENT INFRINGEMENT

JS 44 (Rev. 11/04)            CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**
THERMOLIFE INTERNATIONAL LLC

**DEFENDANTS**
LG SCIENCES

**(b)** County of Residence of First Listed Plaintiff: Los Angeles County
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant: _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
SEE ATTACHMENT

Attorneys (If Known)
**'13CV2172 LAB RBB**

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)
- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 365 Personal Injury - Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Slander / ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | ☐ 650 Airline Regs. | ☒ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine / **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| | ☐ 345 Marine Product Liability / ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury / ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting / ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations / **Habeas Corpus:** | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | / ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare / ☐ 535 Death Penalty | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - Employment / ☐ 540 Mandamus & Other | | | |
| | / ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 446 Amer. w/Disabilities - Other / ☐ 555 Prison Condition | | | |
| | ☐ 440 Other Civil Rights | | | |

**V. ORIGIN** (Place an "X" in One Box Only)
- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 USC SECTION 1331, 1338, 1367; 15:1126
Brief description of cause: Patent Litigation

**VII. REQUESTED IN COMPLAINT:**
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ _____
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

**VIII. RELATED CASE(S) IF ANY** (See instructions):
JUDGE Hon. Janis L. Sammartino
DOCKET NUMBER 13-CV-651

DATE 9/12/13
SIGNATURE OF ATTORNEY OF RECORD: [signature]

**FOR OFFICE USE ONLY**
RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

## ATTACHMENT TO CIVIL COVER SHEET

Attorneys:

Tyler J. Woods
Tu-Quyen Pham
Newport Trial Group, APC
4100 Newport Place, Ste. 800
CA 92660
(949) 706-6464

Eric M. Overholt
Hiden, Rott & Oertle, LLP
2635 Camino del Rio South, Ste. 306
San Diego, CA 92108
(619) 296-5884